which is Marlowe versus Warden and Mr. Gordon, why don't we start with you? Yes, Your Honor. Thank you. May it please the court. Counsel, my name is Jeremy Gordon and I represent the appellate in this case, Mr. Patrick Marlowe. This is an appeal from the denial and dismissal of a 2241. Mr. Marlowe was found guilty of violation of civil rights where death resulted and was sentenced to life on one of those counts. On 2241, the magistrate put forth a report and recommendation in favor of Marlowe and that was overruled by the district court. Our position today is twofold. Our position, first of all, is that the district court made an error in applying an actual innocence test to the savings clause with regard to 2241s. And our second point is that the jury instructions here did not comport with Burrage versus United States. That the district court made an error with regards to that. Now, in the past few days, I did speak to my colleague from the other side, and at that time there was an indication that the government might not talk a lot about the actual innocence test portion with regards to this case. But I'm still at the court service and I still would like to briefly touch on that. The district court, in overruling the report and recommendation, indicated that there should be an actual innocence case that should be applied to this 2241 with regards to the savings clause. Now, in Hahn versus Mosley, the 4th Circuit indicated that you use the substantive law of the District of Conviction, which in this case would be the 6th Circuit, and you use the procedural law of the 4th Circuit, which is the district where the 2255 is out of. But furthermore, in Hahn versus Mosley, the district court, I'm sorry, the 4th Circuit indicated that actual innocence is not a part of a 2241 analysis, and it's not part of a savings clause analysis. Furthermore, we know that actual innocence is a procedural requirement, not a substantive requirement. In a 6th Circuit case that we explained in our brief, Wooten versus Colley, the court indicated that because the petitioner could not prove that he was actually innocent, then the court did not have the jurisdiction to grant him 2241 relief. And the key phrase there is that the party did not have jurisdiction. And I will submit to the court that the fact that they stated that they did not have jurisdiction shows even further that it's a procedural requirement, actual innocence is, as opposed to a substantive requirement. And I will be available at the end of this if the court has further questions on that. But I'd like to move on to the second part of our brief, that is, that the district court erred when the district court found that the jury instructions in this case were appropriate, which would go to- Let me go back. Let me go back to something a little more preliminary. Is barrage applicable at all? In other words, you have to demonstrate that barrage controls this case, right? Yes, Your Honor, we do. Our position, first of all, is that we know that because 6th Circuit law is applicable, 6th Circuit substantive law is applicable, and because the barrage was held retroactively in the case of Opie versus United States. My point is a little different. My point, question is, barrage dealt with a statute, 21 U.S.C. section 841, and what we have here is section 242. Now, the language is similar, but barrage has not been extended beyond 841 to any other case, has it? So, not by the Supreme Court. How about our court? There are cases where- I'm asking about our court. We haven't extended either, have we? That is correct. That is correct. To my knowledge, there is no case that is on the books that indicates that barrage would be extended to this court. And that is why we look to the substantive law of the 6th Circuit. Because the 6th Circuit's substantive law is what is applicable here, then we use the 6th Circuit's substantive law, and it's our position that that includes the retroactivity of barrage to the case that we have before us. I'm not arguing about the retroactivity. I'm arguing about the scope of barrage. Barrage has not addressed a different statute. Similar language in a different statute. But we don't have any case that has construed the language in 242, have we? Not in what I found, Your Honor, no. So the district court in this case was applying death results under section 242 in the instructions, and essentially gave a proximate cause type of instruction, right? Yes, Your Honor. Well, the district court indicated that, the district court engaged in a foreseeability and explained in their ruling that, or in their jury instructions, that it was going to be a foreseeability. As I will get to further in the brief, I don't believe, but it's our position that that does not meet the proximate cause standard with regards to the jury instruction. It's actually broader. The jury would have to find more under the district court's instruction than barrage would have required if it applied. Barrage did butt fork test, right? Barrage did do butt fork. And the district court did roughly approximate cause test. The district court, in a portion of, it's fair to say, it is true that the district court said that the government need only prove that bodily injury or death was a natural or foreseeable result of the defendant's conduct. So that goes to- Is that wrong? That sounds to me, there's nothing wrong with that, is there? That portion, in and of itself, explains foreseeability and explains that portion. But the court did not just stop there, Your Honor. The court went on to say, the government does not need to prove that a defendant intended to cause bodily injury or death or that a defendant's acts were the direct, immediate, or sole cause of bodily injury or death. Now, those things can't, it's our position, Your Honor, that those things cannot be viewed separate from each other. Those things cannot be viewed in a vacuum. Our position is that when the jury was instructed on that whole position and on that whole paragraph, that that was error. And it was error for several reasons, but it does not comport to Barrage, and it definitely does not comport to Martinez or Hancock, which are in the government's brief. Mr. Gordon, this is Judge Reshing. Can I ask an even more, maybe even more preliminary question about this? And it's at the time of the trial, at the time of these jury instructions, did the settled law of the Sixth Circuit sanction these instructions or forbid the Barrage argument? The Martinez case out of the Sixth Circuit specifically says that that court has not interpreted the results in death language in 242. So was your client prohibited from raising this argument at the trial? I'm having trouble finding where the settled law of the Sixth Circuit sanctioned these instructions, even if they were erroneous, as you contend. Your Honor, it's our position that the settled law, that it was settled law because of the law of the case theory. Mr. Marlowe had a trial. Mr. Marlowe had an appeal. Mr. Marlowe had a 2255. All of those things well before Barrage. So it's our position that when we look at all of those things, that the legality of the sentence was well set. So did I, I must have missed that. Did he raise this issue at all of those, at all of those stages and was denied? I do not believe so. I can go back and review. I can go back and review and supplement, but I do not believe so. So if he didn't raise it in a court, no court told him, you know, we disagree with that argument and no one ever raised Barrage and the Sixth Circuit law never foreclosed it. The Sixth Circuit law never suggested that, that this was not a requirement. Then how can I find that the settled law of the circuit was to the contrary? Well, it's our position that, it's our position that, that, that if it, it's our position that if it wasn't, it's our position that if it wasn't a settled law at the time, then it could have been, it would have been something that would have been, that it would have been something that would have been brought up on either direct appeal or on 2255. Okay. And it is something that, it is something that I can, I can go and supplement or I'll review and that'll be something I can bring up on my rebuttal. Yeah, I'm just asking because, you know, whether this is a Jones analysis or a Wheeler analysis, that's the first question is whether the settled law was, you know, was to the contrary originally. And usually in those cases, we have an opinion from the court that says, you know, this is, we interpret the statute one way and then you have an intervening decision that says, no, we interpret it the other way. And, and so settled law is pretty clear, but here, no one's really pointed us to settled law that, that, that would point the other way. That is something that I would, that is something that I would ask to be able to supplement with and something that I would review while my colleague from the other side is presenting. All right. So, if there's no more questions for me on that, I'd like to go on to any other, any other topics that the court would like to discuss. Well, you understand that that's pretty fundamental, right? I do understand. Yes, Your Honor. Okay. Well, based on that, I would like to, based on that, I would like to yield the rest of my time. All right. Thank you, Mr. Warden. Mr. Lee. May it please the court, Jason Lee on behalf of the warden. For multiple reasons, this court should affirm the district court's denial of Marlowe's second habeas petition. First, as Judge Rushing and Judge Motz just alluded to, this court lacks jurisdiction over Marlowe's petition because he could have raised this challenge to his conviction earlier in his direct appeal or on his first habeas petition. There was no case law that rendered such a challenge futile. Because he could have raised this challenge before, he cannot do so now. Second, even if there were jurisdiction, Marlowe's challenge necessarily fails on its merits because the jury instructions used to trial sufficed under barrage. Third, even if the jury instructions were insufficient, that error was nonetheless harmless because the evidence of trial was uncontested that had Marlowe provided medical care earlier, death would not have resulted. Affirmance is required at every stage of this court's analysis. I'm happy to answer any questions about any of these points, but let me take them each in turn. Starting first with jurisdiction, I'd like to focus, as Judge Rushing did, on this court's decision in Inree Jones and the points raised on pages 16 and 17 of the government's brief. Under Inree Jones, which applies here because Marlowe is challenging his conviction and the jury's finding under 18 U.S.C. section 242, Marlowe must show that he was foreclosed from challenging his conviction because of binding case law that at the time of his direct appeal and first habeas petition. That the death results language in section 242 can be satisfied without but for causation. And for the reasons that Judge Rushing alluded to, Marlowe cannot make this showing because the issue of the requisite level of causation under section 242 was an open legal question in the Sixth Circuit at the time. Marlowe was convicted in 2006. He filed an unsuccessful appeal of his sentence in 2007. He filed his first habeas petition in 2009, alleging ineffective assistance of counsel. That same year, the Sixth Circuit in United States v. Martinez made clear that it had never interpreted the death results language in section 242. This meant that at the time of Marlowe's first habeas petition, there was no binding case law on the level of causation one way or another. Because Marlowe, therefore, could have raised this challenge earlier. And because he could have raised this challenge earlier, he cannot do so now under the savings clause in a second habeas petition. And I think this is made clear based on the many cases this court has issued regarding the savings clause. Starting with Henry Jones and following the thrust of those cases is, hey, if you didn't challenge your conviction earlier because during your direct appeal or your first habeas proceeding, it would have been futile under then governing law. Then we'll excuse that failure and we'll let you bring that challenge to your conviction years later if the law subsequently changes and that change is held to be retroactive on appeal. But the counterpoint to that is where you had an opportunity to raise that challenge earlier, where the petitioner had, as this court has termed it, an unobstructed procedural shot. Where the prisoner had an unobstructed procedural shot to raise that challenge earlier, that we won't excuse. We won't let you raise that challenge years later, such as here, where the petition, the second habeas petition was filed 11 years after conviction and in an entirely different circuit. This is a high bar, but we're talking about statutory retroactivity and by design, the savings clause erects a high bar. The savings clause specifically requires that the prisoner's original section 2255 remedy be inadequate or ineffective to test the legality of detention. Under Henry Jones construing that savings clause at footnote three, this court noted that the savings clause operates for prisoners who, through no fault of their own, lack a source of redress. Here, that does not apply to Mr. Marlowe. Marlowe had a source of redress and that was his direct appeal and his first habeas proceeding. And indeed, the Sixth Circuit has made this a pretty straightforward case regarding jurisdiction, or as it turns out, the lack thereof. This is not a case where this court needs to parse another circuit's law and figure out what this precedent stands for, how far this other opinion may extend. Rather, what we have here is a direct statement by the Sixth Circuit issued the same year as Marlowe's first habeas petition, stating that we have never interpreted the death results language under section 242. What that means is Marlowe was free to raise this challenge earlier. He was not foreclosed in any way. Such a challenge was not, in the words of Henry Jones, futile. He had it available to him, and thus he fails the first Henry Jones factor. As a consequence, he also fails the second Henry Jones factor, which requires a subsequent change in the law. But again, because the level of causation required under section 242 was an open legal question in the Sixth Circuit at the time. Barrage did not affect any change. Indeed, there cannot be a change in the law if there was nothing to change. And here, there was nothing to change because there was no binding circuit precedent that foreclosed Marlowe's current challenge having been brought earlier on his direct appeal or in his first habeas petition. And for that reason, this court lacks jurisdiction over his second habeas petition. But even if there were jurisdiction, it's clear that Marlowe's challenge fails on its merits. Marlowe asserts that the jury could not find but for causation because under the jury instructions, the jury was told that the government did not need to prove that Marlowe's conduct was the immediate, direct, or sole cause of Kuntz's death. In Marlowe's view, that meant the jury could not find but for causation. But this is a misunderstanding of but for causation because a but for cause does not need to be immediate or direct or the sole cause of a result. Indeed, the irony here is that Barrage, the case on which Marlowe relies for jurisdiction, dooms his challenge on the merits. Writing for a unanimous court in Barrage, Justice Scalia offered the following example of but for causation. A baseball game where the leadoff batter hits a home run and that team wins by a one to zero score. Now that leadoff home run is a but for cause of the team's victory, even though it's not an immediate cause of victory. Indeed, there were nine more innings left to play. It was not a direct cause of victory. The team was not instantly made victorious, and it was not the sole cause of victory. As Justice Scalia noted, there could be other but for causes of the victory, such as skillful pitching. And indeed, the Supreme Court just last term in Bostock, in an opinion authored by Justice Gorsuch, noted that there can be multiple but for causes for a single outcome. So here, it's clear that the jury instructions complied with Barrage. Moreover, it's clear that Marlowe's challenge is foreclosed under Sixth Circuit law. And here, I'm referencing the United States v. Martinez order that was attached to our second 28-J letter. In that order, the Sixth Circuit affirmed a district court holding that where evidence is sufficient to support a finding of proximate cause, it de facto suffices for a finding of but for causation. And here, I would like to refer to Judge Niemeyer's comments earlier. We agree that the jury instructions did require the jury to find proximate cause. We said that specifically on page 20 of our brief, and Marlowe does not dispute that. So here, we had a finding of proximate cause by the jury. Applying Martinez to these set of facts, it's clear that because the jury therefore found proximate cause under Martinez, that should suffice for any necessary finding by the jury of but for causation. So that's an alternative basis on which to find that Marlowe's claim fails on the merits. Because they were required to find proximate cause that suffices to find but for causation. But even beyond that, we believe a plain textual argument and analysis of the jury instructions shows that the jury was required to find but for causation. The jury instructions referenced the natural and proximate result of Marlowe's actions. By using the term result, that led the jury and required the jury to apply the ordinary common sense meaning of the word result, which under a barrage incorporates a finding of but for causation. So therefore, even looking at the text of the jury instructions, the jury was required to find both proximate cause and but for causation. And we know that they did. And we can tell based on the jury's verdicts on count two versus count three. In count two, the jury found that Marlowe's assaults of Walter Kuntz resulted in bodily injury, but not death. But in count three, the jury found that Marlowe's failure to provide medical care resulted in both bodily injury and death. So what we have here is a considered judgment by the jury in which they differentiated between different consequences of different sets of action by Marlowe. And what they found was the straw that broke the camel's back, the conduct that cost Walter Kuntz his life, was the failure to provide medical care. And so for these reasons, there was no there's no jurisdiction over Marlowe's petition because he could have brought this challenge earlier. And the jury instructions sufficed under Burrage, meaning that Marlowe's challenge fails on its merits. But even if there was an error in the jury instructions, there was uncontested evidence at trial that there was uncontested evidence in trial that the failure to provide medical care was. I'm sorry. There was uncontested evidence at trial that it was the failure to provide medical care that resulted in Walter Kuntz's death. All parties agreed that Walter Kuntz had a treatable medical condition that was attested to by the government's three experts. It was also attested to by Marlowe's experts. Everyone agreed that the subdural hematoma that Walter Kuntz had was a treatable medical condition. However, the attending neurosurgeon that attempted to provide medical care for Walter Kuntz testified that by the time Walter Kuntz arrived in his hospital, he was, quote, well beyond the point of saving. Marlowe did not provide any evidence at trial that Walter Kuntz would have died even if medical care had been provided earlier. The only evidence was that medical care could have saved Walter Kuntz and it was not provided earlier. Indeed, it was five and a half hours after Walter Kuntz started exhibiting symptoms that EMTs arrived on the scene. But even then, Marlowe did not, he was not candid with the EMTs about what had happened. He did not tell EMTs that Kuntz had suffered a head injury. And so EMTs arrived on the scene believing this to be a case of alcohol poisoning. Indeed, one of the EMTs testified that had they known about the head injury, they would have airlifted Walter Kuntz to a trauma center instead of taking him to a local medical center. And so what's clear from the evidence before the jury is that at the very least, Marlowe's failure to provide medical care was at least one but-for cause of Kuntz's death. And that is all the jury was required to find applying a but-for-cause analysis. So for those three reasons, we believe that the district court should be affirmed here. There is no jurisdiction because Marlowe could have raised this challenge earlier on his direct appeal or his first habeas petition. Even if there was jurisdiction, the claim fails on its merits, including under barrage. And even if there was error in the jury instructions based on the uncontested evidence of causation before the jury, any error would have been harmless. I'm happy to answer any questions from the panel, but if there are none, I can rest. Thank you, Mr. Lee. Thank you. Mr. Gordon. Your Honor, based on what's happened here, I would ask for the opportunity to supplement my briefs with the court and provide further legal information. On what? On the issues of the first problem of the savings loss test. What do you want to submit? Any law that exists or that I can find that indicates that settled law of the circuit had established the legality of the sentence. Well, your colleague on the other side offered us three reasons why we should affirm. So if any one of those was correct, we would affirm, right? Yes, Your Honor, that's correct. Well, you wanted to take time to address one of them. Yes. You're prepared to rest on whatever you said with respect to the others. I mean, no, Your Honor, I'm not. I'd like to bring forth the information. I'd like to bring forth the rest of what I have to say. But as the court indicated, the first thing is highly important. All the points are important. The real question is you're making an unusual request. I mean, we're very generous on giving requests, but the briefing was a straightforward briefing. You have to come under the savings clause. That's the whole basis for your being in court, because this is your second petition. And you want to re-brief that? All right. Well, I can go on to the other issues that were brought up. In our original brief that we brought up in the district court, we indicated how and why we believe that at the time of Marlowe's conviction, the law in the Sixth Circuit did not require a showing of but-for-causation in order to support a conviction under 18 U.S.C. 242 when death results was at issue. This was in the briefing that we submitted to the district court and as part of the record on appeal. And at that point, that was what the magistrate found that the 2251 should be found to be granted. And that particular thing was not argued by the government at that time. So our position is that that is how we meet the first team. Now, as for the second standard, as for the second test that Barrage applies here, our position is that Barrage does apply here and that the jury should have explained the explicit but-for-causation element that was explained in Barrage. Our position is that the jury instructions in Martinez do not apply here because the jury instructions in Martinez, first of all, are better than what Mr. Marlowe was saying. Our position is that the jury instructions in Martinez explain that approximate cause would be appropriate and the jury instructions in that case indicated that the jury must find that Martinez's fraud is either approximate or the direct cause of two patients' deaths. But in this case, it was explained not only that there had to be a foreseeability analysis, but the court also indicated in our case, in the second portion that I read, that the jury was not required to find that the defendant was their sole cause of death or the direct cause of death. So in our case, unlike the jury instructions in Barrage and unlike the jury instructions in Martinez, we did not get to that. We did not get the same jury instructions. And in regards to Hancock, Hancock also did not have the second set of jury instructions, that the defendant did not need to be the sole cause of death. If you're explaining these things to a jury, then it matters. What matters on both sides is important and appropriate. So it's our position that the jury instructions here did not provide but for causation as to the information because of what was in the totality of the jury instructions that were read. It was not sufficient under Barrage. So then it's our position that that second portion is met. So then lastly, the information that the, so based on those things, it's our position that the appellate court should reverse and send the case back down to the district court and with instructions to find that the 2241 should be granted. All right. Thank you, Mr. Gordon. We normally would come down and greet you. Are you in Texas, Mr. Gordon? Yes, sir. That's going to be a little hard for us to get down and shake your hand. But that's our normal custom. And since we're acting virtually here, we'll greet you both. And thank you for your arguments. And we'll proceed on to the next case. Thank you very much. Thank you, your honors. Thank you.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Allison J. Rushing